UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00573-WYD

DOMONIC MEYERS-SCHREINER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for Disability Insurance Benefits ["DIB"] under the Social

Security Act ["the Act"], 42 U.S.C. §§ 401-33.  For the reasons stated below, this case is

reversed and remanded for further factfinding.

      Plaintiff was born in October 1965, and was 38 years old on her alleged onset of

disability date and 40 years old when her insured status expired.  (Transcript ["Tr."] 60,

70.)  She is a 43 year old wife and mother who worked for 18 years until her doctor

restricted her to less than full time work in 2004.  (*Id.* 71, 113-14, 122.)  Plaintiff has a

high school equivalent education plus an associate's degree (*id.* 121, 690-91), and has

worked as an administrative supervisor, administrative secretary, bookkeeper, legal

secretary, retail manager, and receptionist (*id.* 75, 710).  She asserts that she was

always employed, sometimes in more than one job, and was generally active and athletic.  (*Id.* 101, 471).

In March 1999, however, Plaintiff was rear-ended in a hit and run accident and immediately felt whole body pain.  (Tr. 460, 467.)  She claims disability benefits on grounds that her injuries did not resolve after conservative treatment (*id.* 543), four surgeries (*id.* 190, 197, 209, 216), six courses of therapy (*id.* 461), a pain management clinic, and multiple psychiatric treatments.  She further asserts that she tried to work after her accident and after her last surgery in 2002, but could not sustain it.  (*Id.* 89, 518, 524.)  Indeed, Plaintiff worked until July 2004, although she was restricted to part time work.  (*Id.* 534, 525.)  She testified that her job performance deteriorated because of her condition, that she had so many doctor appointments she was missing too much work, and that as a result she finally quit in 2004.  (*Id.* 471, 522.)

Plaintiff filed an application for benefits in September 2004 claiming that she became disabled on March 3, 1999 due to a mood disorder, depression, chronic pain, bilateral thoracic outlet syndrome, fibromyalgia, migraines, loss of feeling in her arms and hands, and dyslexia.  (Transcript ["Tr."] 122.)  She also alleges as impairments chronic reflex sympathetic disorder, no feeling in chest cavity, being shaky, blurred vision, and blackouts.  (*Id.* 112.)  Plaintiff later amended her alleged onset date of disability to July 21, 2004.  (*Id.* 690).

The Colorado Disability Determination Services ["DDS"] denied Plaintiff's claims at the initial determination stage.  (Tr. 35, 41-43).  Plaintiff requested a hearing, and a hearing was held on June 27, 2007 before an Administrative Law Judge ["ALJ"].  (*Id.* 687-712.)  In a decision dated August 21, 2007, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Act.  (*Id.* 15-34.)  This decision is discussed in more detail below.

The Appeals Council declined review of the ALJ's decision (Tr. 6-9), and this appeal followed.  The ALJ's decision is the final administrative decision, and this case is ripe for judicial review.

II.    ANALYSIS

A.    The ALJ's Decision

The ALJ made the following findings:

1.    Plaintiff last met the insured status requirements of the Act through June 30, 2006 (Tr. 20, Finding 1).  Plaintiff had not engaged in substantial gainful activity from her amended alleged onset date of July 21, 2004, through her date last insured on June 30, 2006 (the relevant period) (*id.*, Finding 2).

2.    Through the date last insured, Plaintiff had the following "severe" impairments:  fibromyalgia/chronic pain syndrome/history of thoracic outlet syndrome; affective disorder; anxiety disorder; and somatoform disorder (*id.*, Finding 3).  Plaintiff's severe impairments did not meet or medically equal the criteria of any of the impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments) (Tr. 22, Finding 4).

3.    Through the date last insured, Plaintiff had the residual functional capacity ["RFC"] to perform light work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting six hours in an eight hour workday; standing and/or walking six hours in an  eight hour workday; occasionally bending, squatting, kneeling and climbing stairs/ramps; no complex tasks; SVP 2 or less and GED of 1-2; and no dealing with the general public (Tr. 26, Finding 5).

4.    Through the date last insured, Plaintiff was unable to perform any past relevant work (Tr. 33, Finding 6).

5.    Based on the testimony of a vocational expert, there were unskilled, light jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 33-34, Finding 10). Thus, Plaintiff was not disabled under the Act during the relevant period (*id.* 34, Finding 11).

B.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding. In so finding, I note that the ALJ's decision is replete with examples of selective application of the evidence and/or improper substitution of his judgment for that of the medical providers. Further, the ALJ went out of his way to find Plaintiff and her treating providers not credible (noting this 33 times in this decision), but many of his credibility findings were not based on substantial evidence. From this I have serious doubts about whether the ALJ who wrote the decision at issue can be fair and impartial to this case. Accordingly, on remand, the Commissioner shall appoint a new ALJ to the case.

C.    Whether the ALJ's Decision is Supported by Substantial Evidence

    1.    Whether the ALJ Erred at Step Two in Connection with Plaintiff's
        Headaches/ Migraines, Blackouts and Lumbar Impairments

Plaintiff argues that the ALJ erred in finding that her headaches, blackouts and lumbar impairments are not severe at step two or worthy of further consideration. I note that at step two, the agency determines whether the claimant's alleged impairment(s) are "severe." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quotation omitted). "'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1521(a); 416.921(a)). "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Id.*

Case law prescribes a very limited role for step two analysis. *Lee*, 2004 WL 2810224, at *2. "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quotation omitted). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). In turn, severity is a prerequisite for finding presumptive disability at step three and to determine RFC. 20 C.F.R § 404.1520(e); 20 C.F.R. § 404.1545; SSR 96-8. However, once any impairment is found to be severe, the ALJ must evaluate all limitations that arise from the impairments

in determining an individual's RFC, even those that are not severe. 20 C.F.R. § 416.945(a)(2); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

I find that the ALJ erred at step two by disregarding substantial evidence in the record which supported the existence of impairments he found not to be severe. I first address the ALJ's findings regarding Plaintiff's alleged lumbar impairments. The ALJ stated that while Plaintiff alleges that she has degenerative changes in her lumbar spine, "[t]here is no objective evidence of a lumbar impairment during the relevant period." (Tr. 20.) Therefore, the ALJ found that "the alleged degenerative disc disease of the lumbar spine is not medically determinable and will not be considered in the remainder of the decision. (*Id.*) I find that the ALJ erred in making this finding, as he ignored evidence in the record which could support the existence of such an impairment.

As Plaintiff notes, in June 2004, Dr. Shiffman ordered a CT scan of Plaintiff's lumbar spine and found "There is an abnormality of segmentation with partial lumbardization of L5 on the left." (Tr. 514.) Further, Dr. Solano, Plaintiff's treating physician since 1999, diagnosed lumbar strain/back spasm, lumbosacral. (*Id.* 290.) A physical therapist treated Plaintiff's "lumbar fascias". (*Id.* 474, 480.) Dr. Jahani found in an MRI "degenerative disc disease with associated facet arthropathy at L5-S1." (*Id.* 666.)[1] Further, there is evidence that this impairment caused work limitations. (*Id.* 666—Dr. Jahani found "trouble sitting still more than 30 minutes"; 632—Dr. Solano found that Plaintiff could sit one hour/total in 8h day); 23 and 502—Dr. Cambe looked at

---

[1] Also, low back pain with bilateral radiculopathy was diagnosed by Dr. Saker. (*Id.* 464.) Dr. Eross noted "low back movement" was an aggravating factor. (*Id.* 604.)

increasing sitting tolerance, sit one hour at a time, 4 h total; 494—Dr. Sanders found

Plaintiff could sit 1-2 hrs at a time, 662—Dr. Dworetsky found Plaintiff was limited in her

sitting capacity). The ALJ erred in disregarding this evidence. Further, to the extent that

the ALJ was unable to determine what this evidence meant, *i.e.*, whether the evidence

supported a lumbar impairment, he had a duty to contact the physicians to obtain

information on this issue. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).[2]

      I next address Plaintiff's headaches/migraines. Similar to his findings regarding

Plaintiff's lumbar impairments, the ALJ found "that there is no objective medical

evidence" to support this disorder. (Tr. 20.) He rejected the opinion of Dr. Eross, a

neurologist, that Plaintiff was suffering from migraines based in part on a MRI of

Plaintiff' brain. (*Id.* 20-21.) The ALJ stated that Dr. Eross' findings as to abnormalities

found in the MRI of the brain "are given no weight, as they are merely speculation on his

part." (*Id.* at 21.) The ALJ also stated that consultative examiner Dr. Hehmann noted

the lack of any work up for the daily headaches, and found that this "signifies the lack of

severity of the alleged headaches." (*Id.*) He also found that Plaintiff "appears to

exaggerate the nature, signs and symptoms of her alleged headaches, which impacts

---

    [2] The Commissioner ignores the bulk of this evidence, focusing only on the MRI from Dr. Jahani. (Def.'s Resp. Br., p. 14.) While this MRI was taken after the date Plaintiff was last insured, it does appear to substantiate earlier findings of the doctors. Further, there is nothing in the record to indicate that Plaintiff's condition worsened after the date she was last insured. This should have been taken into account. Further, the ALJ relied on evidence outside the date Plaintiff was last insured in connection with reaching some of his decisions. It is not proper for the ALJ to rely on such evidence when it supports a finding adverse to the claimant but ignore or reject such evidence when it supports the claimant's contentions. I further note that the physical therapists' findings also should have been considered on this issue, which appear to substantiate the opinions of the treating physicians. While physical therapists do not qualify as an "acceptable medical source" under the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), they do qualify as "other sources", *id.* §§ 404.1513(e), 416.913(e). *Komar v. Apfel*, No. 97-5125, 1998 WL 30267, *2 (10th Cir. 1998). "As such a physical therapist's opinion can be considered, but it is entitled to less weight than that accorded to the opinions of acceptable medical sources." *Id.*

negatively on her credibility" and that her headaches "are not medically determinable and will not be considered in the remainder of the decision." (*Id.*)

I find many errors with the ALJ's findings regarding Plaintiff's headaches. First, I note that the record clearly documented that Plaintiff had headaches and migraines. Treating doctors Richard Sanders, MD; Scott Raub, DO; Julie Colliton, MD; Phil Cambe, MD, and William Saker, Psy.D., all diagnosed and treated Plaintiff's headaches. (Tr. 180, 192, 195, 197, 218, 234, 254, 255, 529—Dr. Sanders findings of headache, "constant occipital headache" indicate surgery, daily persistent headache; headaches recurred); 323, 462, 464—Dr. Saker's findings of migraine HA, mixed muscle tension-migraine type PTSD headache, daily, treated with Midrin, Advil; daily muscle tension headache; diagnosis, treatment); 269, 278, 283, 290, 377, 379, 413, 421, 461—history of migraines increased since MVA); 469, 474, 480, 484-87—pain clinic); 585-86—ReEntry work evaluation; 590-91 and 593—Dr. Colliton's findings of recalcitrant migraine; blood test; migraines). Further, Dr. Colliton referred Plaintiff to headache specialist, Eric Eross, DO who stated Plaintiff "fulfills the definition for Headache Institute criteria of migraine headache." (Tr. 607.)

Incredibly, the ALJ disregarded almost all of this evidence, finding that there was no objective medical evidence to support this disorder. I first note that headaches and migraines are not generally proved through diagnostic or laboratory tests but are diagnosed through medical signs and symptoms. *See, e.g., Thompson v. Barnhart,* 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006); *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996). Indeed, as the Tenth Circuit previously noted:

> The statement indicates that the ALJ may have relied on the lack of conclusive laboratory-type findings to confirm claimant's diagnosis and/or symptomatology. We are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the failure to produce such test results is surely an improper basis for discrediting a claimant's uncontroverted testimony.

*Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at *3 (10th Cir. 1997).

As outlined above, Plaintiff's doctors clearly diagnosed the existence and severity of headaches based on medical signs and symptoms experienced by Plaintiff. That constitutes objective medical evidence of Plaintiff's headaches that was improperly disregarded by the ALJ. Similar to the situation in *Thompson*, the ALJ erred in failing "to acknowledge the abundant documentation of migraine diagnoses, symptoms and signs as being 'objective' evidence to support" the treating physicians' opinions. *Id.*, 493 F. Supp. 2d at 1215.

Second, in this case there actually were diagnostic tests that supported the headache impairment—two MRIs (Tr. 233, 516) and a blood test (*id.* 591). The ALJ improperly substituted his medical judgment for that of Dr. Eross in finding that his opinions that the MRI substantiated the existence of headaches (Tr. 602, 607) was speculation. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

As to the ALJ's finding that the "lack of any workup" proved Plaintiff's headaches were nonsevere, again I find that this was clearly error. The ALJ disregarded the substantial medical evidence in the record indicating the severity of Plaintiff's headaches. Further, the MRIs and blood test that Plaintiff underwent would certainly seem to constitute workups. Finally on this issue, the ALJ misinterpreted the very evidence that he relied on to find that there were no workups regarding headaches.

Dr. Hehmann opined that there was a lack of workups as to Plaintiff's *blackouts*, not her headaches. (Tr. 629.)

I now turn to whether the headaches caused an impact on Plaintiff's ability to work. There is evidence that they do. Dr. Colliton stated the headaches caused work restrictions. (Tr. 651, 657.) Based upon the foregoing, I find that ALJ's finding that Plaintiff's headaches/migraines were not a severe impairment at step two was not supported by substantial evidence. Further, I find that given the substantial medical evidence of Plaintiff's headaches and the severity thereof, it was error for the ALJ to find that Plaintiff was not credible as to her complaints about her headaches. It was also error to disregarding all of the medical evidence and diagnoses of headaches because they were allegedly based on Plaintiff's "self-reports" (*id.* 21). *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (the ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints"); *Garcia v. Barnhart*, 188 Fed. Appx. 760, (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence").

As to Plaintiff's blackouts, the ALJ found that Plaintiff's and her husband's reports of blackouts suffered by Plaintiff were not credible and noted that there is no objective medical evidence to support such a claim. (Tr. 21.) He found that an EEG was "unremarkable", that there were no signs of seizure or epileptic activity, and that "there is no objective medical evidence to support a finding that the claimant has seizures,

blackouts, or has a medical condition that would cause the alleged blackouts." (*Id.*) Therefore, the ALJ stated that "the alleged blackouts/epilepsy/seizure disorder is not a medically determinable impairment and will not be considered in the residual functional capacity below." (*Id.* 21-22). The ALJ also gave no weight to Plaintiff's allegation that as a result of the blackout/seizure disorder, she was unable to drive. (*Id.* 22.)

In this case, however, the blackouts were documented by several doctors, who gave reasons for them that appear to possibly be related to the severe impairments that the ALJ found. Dr. Raub noted Plaintiff's belief that the blackouts could be caused by extreme pain. (Tr. 260, 262.) Dr. Saker opined the blackouts were psychogenic in nature and could be a psychological defense mechanism to the trauma Plaintiff experienced. (*Id.* 333, 416.) No doctor indicated disbelief of Plaintiff's complaints of blackouts. In fact, as a result of the blackouts numerous providers, including Drs. Mahler, Cambe, Colliton, Solano and Hehmann, counseled against driving and/or thought that her driving should be restricted. (*Id.* 476-77, 504, 625, 634.) The ALJ made an improper medical judgment when he determined that Plaintiff's blackouts were not caused by a medical impairment. Further, I look with a skeptical eye at his opinion that Plaintiffs were not credible on this issue, when there was ample evidence in the record that supported the existence of these blackouts. *See Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir. 1987).

Finally, to the extent the record was unclear on this issue, *i.e.*, as to what impairment or impairments the blackouts were caused by, the ALJ had a duty to develop the record on this issue. The Tenth Circuit's recent opinion in *Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008) is instructive on that issue. In *Maes*, the record showed

that Plaintiff was prescribed medication used to treat depression but did not contain evidence demonstrating that she was diagnosed with or treated for depression or another mental condition. *Id.* at 1098. Based on this lack of evidence, the ALJ determined that the claimant was not disabled. *Id.* The Tenth Circuit held that the evidence was "an inadequate basis for a determination-one way or the other- as to Ms. Maes's alleged disability." *Id.* "The medication could have been prescribed because Ms. Maes was suffering from a severe mental impairment, or it could have been prescribed for a mild condition." *Id.* Thus, the ALJ was required under 20 C.F.R. § 404.1512(e) "to seek additional records that may clarify the extent of the disability." *Id.* Without that clarification, the Tenth Circuit could not say that the ALJ's determination was supported by substantial evidence." *Id.* Just as in *Maes*, the record here contains documentation that Plaintiff suffered blackouts, but it may have been inadequate to determine whether they caused by a severe impairment. On remand, the ALJ must develop this issue.

2. <u>Whether the ALJ Erred at Step Three in Finding that Plaintiff was not Presumptively Disabled and In Assessing Plaintiff's Mental Impairments in the RFC</u>

A. <u>Plaintiff's Thoracic Outlet Syndrome</u>

Plaintiff argues that the ALJ erred in finding her not presumptively disabled in connection with her impairments related to Thoracic Outlet Syndrome. Specifically, Plaintiff argues that the ALJ did not properly apply Listing 1.04 that calls for an alternative application of 11.04 if the former is not satisfied. She further asserts that the ALJ ignored the first nine exhibits in the administrative record containing 153 pages of

medical evidence supporting Plaintiff's claim, including treating physician Dr. Sanders' treatment records.  (Tr. 152-291.)

Turning to my analysis, I first find that since the ALJ erred at step two and did not include impairments that may be severe, the ALJ will necessarily have to conduct a new step three analysis as to any impairments that are now found to be severe.  On remand, I also direct the ALJ to examine whether Plaintiff's impairments meet the requirements of Section 11.00 of the Listings (including Section 11.04).  Plaintiff is correct that Section 1.00(B)(1) of the Listings, 20 C.F.R. Pt. 404, Subpt P, App. 1, states that musculoskeletal impairments "with neurological causes are to be evaluated under 11.00ff."  *See also* Sections 1.00(E)(2); (K).  It does not appear that the ALJ made a determination under Section 11 of the Listings or assessed whether that Section applied to Plaintiff's impairments.  In making this assessment the ALJ is directed to review all of the medical evidence in the case, *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1997), including the neurologic disease diagnosed by Dr. Sanders.  (Tr. 192, 197, 202, 209, 216, 218.)  Plaintiff is correct that the ALJ did not reference much of the medical evidence in this case or indicate that he had reviewed it.

### B.    Plaintiff's Mental Impairments

I further find that the ALJ did not properly assess Plaintiff's mental impairments at this step or in Plaintiff's RFC, as he did not properly weigh the medical evidence on this issue.  I first note that three of Plaintiff's treating sources found that Plaintiff was unemployable due to her mental limitations—Dr. Mahler (Tr. 293), Dr. Colliton (*id.* 590, 599, 643, 658), and Dr. Dworetsky (*id.* 661-62).  Every other provider, including the state agency physician, found that Plaintiff had at least moderate restrictions from her

mental impairments.  Despite this, the ALJ decided not only that Plaintiff's mental impairments did not meet the Listings, but that the mental restrictions should not, for the most part, be included in Plaintiff's RFC.  I find error with these findings, as discussed below.

Turning to the Listings, the ALJ found that Plaintiff's mental impairments did not meet the Listings because, among other things, she did not have two marked difficulties under the "paragraph B" criteria of Listings 12.04, 12.06 and 12.07.  (Tr. 25.)  Instead, the ALJ found that Plaintiff had only moderate restrictions or limitations.  (*Id.*)  In so finding, the ALJ rejected entirely the opinions of Dr. Dworetsky, Plaintiff's treating psychiatrist who treated Plaintiff from November 2004 to September 2005 and October 2006 to March 2007.  Instead, he relied on the state agency physician's assessment, treating physician Vann's treatment notes (who did not do an assessment of Plaintiff's mental work restrictions) and treating physician Colliton's second assessment of Plaintiff's mental work abilities, issued after the date Plaintiff was last insured.  (*Id.* 24-25.)  I find error with the ALJ's treatment of the treating physicians and the weighing of the evidence as to Plaintiff's mental impairments.  This also requires a remand.

I first address treating physician Dr. Dworetsky, who has a history of treatment with Plaintiff and issued a Medical Source Statement of Ability to Do Work-Related Activities - Mental on April 1, 2007.  (Tr. 661-63.)   In that assessment, Dr. Dworetsky found that Plaintiff had many moderate to marked restrictions in her ability to work.  (*Id.*)  The ALJ stated that he did not give Dr. Dworetsky's assessment of Plaintiff's mental impairments "controlling weight".  (Tr. 23.)  However, it appears that he gave it no weight.  At the very least, it is unclear from the record whether weight was actually given

to any of Dr. Dworetsky's assessments. This is error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quotation omitted). The ALJ also did not state what weight he gave to the treatment notes of Dr. Dworetsky. This was also error, as the medical findings in the notes could be relevant to assessing the severity of Plaintiff's impairments.

I further find that many of the reasons the ALJ stated as the basis to give greater weight to other sources than Dr. Dworetsky are not supported by substantial weight. For example, the ALJ found that Dr. Vann had more contacts with Plaintiff than Dr. Dworetsky. However, this is not true as pointed out by Plaintiff. Dr. Dworetsky's records show ten (10) treatment visits from November 2004 to March 2007 (Tr. 559-575; 659-660), while Dr. Vann's records show only 6 visits from February to April 2005. (*Id.* 393-421.) Dr. Dworetsky's records also show a longer period of treatment than Dr. Vann's records.

The ALJ also stated as a basis to give Dr. Vann's opinions more weight that Dr. Vann "was able to discern that the claimant presented her condition in 2004 and 2005 with exaggeration, which Dr. Dworetsky, with his limited contact with the claimant . . . was unable to figure out." (Tr. 23.) I find two problems with this finding. First, the ALJ improperly substituted his medical judgment for that of Dr. Dworetsky's when he found that the doctor was unable to figure out that Plaintiff was exaggerating her claims. Dr. Dworetsky had ample opportunity to determine whether Plaintiff was credible and

-15-

obviously believed that she was. The ALJ cannot second guess Dr. Dworetsky in this regard.

Second, the ALJ correctly noted that Dr. Vann stated that Plaintiff has a history of elaboration and "telling stories". However, it is unclear whether this is in reference to Plaintiff's recounting of her personal history as compared to her impairments. To the extent this was unclear, this should have been further explored by the ALJ. *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). It is clear, however, that Dr. Vann diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition as well as thoracic outlet syndrome, chronic fatigue, fibromyalgia, headaches, and head, neck and back pain. (Tr. 421.) Dr. Vann never retreated from this diagnosis. Thus, the ALJ appeared to improperly engage in a selective review of Dr. Vann's notes.

I further note that other sources, including Dr. Cambe who worked with Dr. Vann in the Mapleton Pain Management Program, diagnosed the same or similar impairments as Dr. Vann, and Dr. Cambe stated that Plaintiff as unable to work. (Tr. 507.) Further, Plaintiff underwent a lengthy treatment in the Mapleton Program for her pain, Plaintiff's other treating physicians generally substantiated her pain allegations, and Plaintiff was prescribed medication for her pain. This obviously lends support to the credibility of Plaintiff's allegations of pain. *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (finding that the ALJ erred in rejecting as not credible Teter's allegation of disabling pain when all the medical reports, even those that noted that Teter exaggerated his symptoms, recognized a psychological component to his pain and none of them dismissed Teter's pain as not genuine).

The ALJ also found that Plaintiff's lack of submission of a work assessment from Dr. Vann was "highly suspicious." (Tr. 24.) However, the ALJ was not entitled to make that assumption without inquiring of Dr. Vann the reasons for the lack of an assessment. *Maes*, 522 F.3d at 1097 ("when the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue"). There are numerous reasons why Dr. Vann may not have filled out an assessment, and it was error to assume that the reason must substantiate the ALJ's finding that Plaintiff was not credible. *Id*.

Finally, the ALJ rejected Dr. Dworetsky's assessment because he found that for the period he treated her, Plaintiff's condition improved with medication. He also found that Dr. Dworetsky's treatment notes do not support his assessment. I do not find either of these to necessarily be true based on my review of the notes. (Tr. 565-75, 659-60.) First, they are very difficult to read, making me suspicious of how much the ALJ actually relied on them. Certainly he did not explain how the notes are inconsistent with Dr. Dworetsky's mental work abilities assessment. Second, to the extent the notes are legible, they appear to substantiate Plaintiff's impairments and note symptoms that could be consistent with his findings in his assessment. (Tr. 567-68—panic, mood swings, pain blackouts, 659—still restricted from doing much, blackouts). Certainly there is nothing in his notes that appear to be inconsistent with his findings. Finally, when the evidence is viewed as a whole I find nothing to substantiate the ALJ's findings that Plaintiff's condition improved with medication.[3]

---

[3] Being "stable" on medication is not the same as an actual improvement.

Finally, in his step three analysis the ALJ found that his opinions were consistent with the treatment notes from Dr. Dworetsky, Dr. Vann, and Dr. Mahler, and the 2007 mental assessment of Dr. Colliton. (Tr. 25.) This finding is also not supported by substantial evidence. First, the treatment notes from Drs. Dworetsky, Vann and Mahler did not attempt to assess Plaintiff's work related impairments.

Second, as to Dr. Colliton, while the Medical Source Statement that she filled out in 2007 related to Plaintiff's mental impairments stated only mild to moderate work restrictions in connection with the areas asked about in the form (Tr. 654-56), the ALJ completely ignored her Report of Diagnosis dated the same day as the Medical Source Statement which stated her opinion that Plaintiff cannot engage in sustained work activity due to physical and psychological issues. (*Id.* 657.) This appears to be consistent with her 2005 assessment that Plaintiff was unable to work full time even in unskilled, seated employment. (*Id.* 589-90.) Dr. Colliton stated in 2005, among other things, that Plaintiff was cognitively unable to perform tasks of regular work activity. (*Id.* 590.)

The ALJ erred in not properly considering this other evidence of Dr. Colliton, which casts considerable doubt as to whether she was properly a source that the ALJ could rely on to support his findings regarding Plaintiff's mental impairments. *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ('[i]n evaluating plaintiff's testimony . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review"). At the very least, on remand, if the ALJ believes that it is unclear from the

evidence of Dr. Colliton precisely what her beliefs are regarding Plaintiff's impairments, the ALJ has a duty to clarify this issue with her. *Maes*, 522 F.3d at 1097; *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) .

Given the foregoing, I find that this case must be remanded so that the medical evidence from Plaintiff's treating physicians can be properly weighed as to Plaintiff's mental impairments. This necessarily means that the evidence relied on by the ALJ, including the findings of Dr. Ryan, the state agency physician, Dr. Burton and Dr. Colliton must also be reweighed.[4]

Finally, I address Plaintiff's mental RFC. While the ALJ rejected a finding that Plaintiff's mental impairments were presumptively disabling, the ALJ stated in his step three analysis that Plaintiff had moderate impairments or restrictions in daily living, social functioning, and maintaining concentration, persistence or pace. (Tr. 26.) He appeared to base this on Dr. Colliton's mental health assessment of February 2007. However, as discussed above, the ALJ was selectively relying on evidence from Dr. Colliton which supported his assessment while ignoring her conclusions in both 2005 and 2007 that Plaintiff could not work due to her cognitive and other difficulties.

---

[4] I note as to Dr. Burton that the ALJ found that her examination supports his finding that Plaintiff was exaggerating and thus not credible. (Tr. 25.) Again, I find that this is improper speculation on the part of the ALJ. Dr. Burton did not state that Plaintiff was exaggerating or that she was not credible. Instead, she diagnosed Plaintiff with multiple impairments and found that despite being on a fairly aggressive medication regime, Plaintiff was still unable to function. (Tr. 337-38.) She further stated that if Plaintiff performed in real life as poorly as she did on the testing given by Dr. Burton, it would be difficult for her to do most jobs. (*Id.*) Thus, while she questioned some of Plaintiff's efforts around the former Mental Status Examination, she did not attribute this to a lack of credibility. Instead, she stated that this could be due to an underlying cognitive disorder or symptoms of pseudodementia associated with her Major Depressive Order. (*Id.*) She recommended further neuropsychiatric testing to determine these deficits, which the ALJ ignored. (*Id.*) Finally, Dr. Burton observed that Plaintiff presented somewhat dramatically "with regard to her walking very slowly and seemingly not being able to get comfortable". (*Id.*) However, against she did not attribute this to a lack of credibility but stated that she was unable to delineate whether this was due to her medical situations versus psychological factors. (*Id.*).

Further, the ALJ erred because he did not include the moderate impairments he found in the RFC and did not explain why he failed to include these limitations.  I find this was error.  *See Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist ..., the resulting hypothetical question was flawed").  Instead, the ALJ stated only "no complex tasks; SVP 2 or less and GED of 1-2; and no dealing with the general public."  (Tr. 26.)  However, as Plaintiff notes, a claimant's mental functioning is based on her ability to perform mental work activities, 20 C.F.R. § 404.1521(b), which are not defined as SVP 2 and GED I-2.  The ALJ did not explain how he reached this conclusion or how it incorporates the findings of Dr. Colliton that he relied on.

Based on the foregoing, the RFC must also be reassessed on remand after a proper weighing of the evidence.  This must include an assessment of Plaintiff's mental and physical impairments in combination.  There appeared to be no assessment of this in the ALJ's decision.  The RFC must also include a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir.  1994).  Further, the RFC must include an assessment of how all of Plaintiff's symptoms from her impairments affect her ability to perform work-related activities.  *See Young v. Barnhart*, No. 04-7076, 2005 WL 2605301, at *3 (10th Cir. 2005).  In that regard, I must comment on the ALJ's pain analysis.

The ALJ appeared dogged in his attempts to discredit Plaintiff entirely, including her complaints of pain, because he believed she was exaggerating her symptoms.  He found Plaintiff, her husband, and her doctors not credible at least 33 times in a 34 page decision (Tr. 20-21, 23-32), yet he did not cross examine on credibility issues.  Further,

he based his credibility findings as to exaggeration of symptoms on vague statements of one doctor (Dr. Vann) and statements of another doctor (Dr. Burton) that I found previously did not support his credibility finding.  The ALJ's credibility finding was also contrary to a broad panel of treating physicians who found Plaintiff's complaints to be credible, diagnosed a chronic pain disorder and severe impairments, and found that Plaintiff's impairments were disabling as to full time work.  Further, his credibility finding is contrary to the vast bulk of the medical evidence which clearly documented that Plaintiff had severe pain from her impairments.  Indeed, almost every doctor who saw Plaintiff found that she could not work due to her pain and related impairments.

The case of *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985) is particularly instructive on this issue.  In that case, although the ALJ relied on reports from three physicians in making his determination, he read the reports selectively.  *Id.* at 1106. Further, the ALJ failed to acknowledge that these reports clearly showed Teter's pain to have both physical and psychological components.  *Id.*  In other words, the reports all recognized a psychological component which amplified Teter's pain, and none of them dismissed this element as not genuine.  The ALJ in that case also relied on reports by doctors of Teter exaggerating her symptoms, but failed to consider the fact that her exaggeration was the result of a severe underlying emotional disorder with a severe pain behavior.  Finally, the ALJ "appeared to rely to some extent on Teter's demeanor at the hearing in assessing the credibility of his pain allegations."  The Tenth Circuit held, however, that where the uncontroverted record evidence corroborated a claimant's pain as genuine, albeit partly psychological, the ALJ may not reject the claimant's assertions on the basis of demeanor alone.  *Id.*  The Tenth Circuit thus found that the ALJ's

determination that Teter's pain did not prevent him from performing a full range of sedentary work was not supported by substantial evidence. Indeed, it noted that "the only reasonable conclusion to be drawn from this record is that Teter is completely disabled by his pain." *Id.*

The ALJ's credibility finding is even contrary to his own finding that Plaintiff has a severe impairment in the form of a chronic pain condition. Yet the ALJ failed to consider the effect of Plaintiff's pain on her ability to work. This was error. *See Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994) ("[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. . . . The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted).[5]

Further, while the ALJ noted the proper analysis that must be considered in evaluating pain (Tr. 26-27), he did not appear to apply that analysis to this case. Specifically, he failed to consider the ample testimony and evidence regarding Plaintiff's reduced activities (focusing only on one planned road trip (Tr. 27)) and failed to consider social functioning, strong narcotics medications Plaintiff was taking and their side effects, Plaintiff's extensive attempts at treatment, and her long work history. He also improperly penalized Plaintiff for her attempts at work, *see Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990), and improperly found that Plaintiff had no limitations in the

---

[5] Even if the record would permit an inference that Plaintiff is exaggerating her symptoms to an extent, it still appears almost indisputable from the record that she has moderate to severe symptoms of pain that impact her ability to work.

upper extremities since she was able to perform a job for a period of time that allegedly required significant keyboarding despite Plaintiff's testimony that the physical requirements of her jobs were changed to accommodate her. (Tr. 29, 693). Indeed, numerous doctors opined that Plaintiff was limited in her upper extremities, and I find the ALJ did not properly consider this evidence. The fact that Plaintiff may have stated that her job in 2003 required keyboarding does not somehow mean that her doctors erred in finding that Plaintiff had limitations in her upper extremities. Those are medical findings that cannot be ignored. *Washington*, 37 F.3d at 1439.

The ALJ also improperly gave short shrift to Plaintiff's allegations, as substantiated by her treating neurosurgeon Dr. Sanders, that while she was originally able to work after her accident, she eventually became unable to work due to her symptoms becoming worse, frequent missed days at work, and frequent doctors' visits. (Tr. 693-94, 518, 522.) Further, the ALJ failed to consider the effects of Plaintiff's fatigue, migraines, blackouts or other related symptoms on her ability to work. Based on the foregoing, I find that the pain/credibility assessment is not supported by substantial evidence and must also be reassessed on remand.

3.   Whether the ALJ Erred in Giving No Weight to the Opinions of Plaintiff's Treating Physicians

As explained above, many of Plaintiff's treating physicians opined that Plaintiff was disabled as a result of her impairments. In addition to the doctors who made this assessment in connection with Plaintiff's mental impairments, which I found in the previous section were not adequately weighed, many of Plaintiff's other treating physicians made this assessment.

Specifically, Plaintiff's treating neurosurgeon Dr. Sanders found that Plaintiff was not able to perform meaningful work at any level and that she was permanently totally disabled. (Tr. 524). In July 2005, Dr. Sanders concluded in a physical assessment of Plaintiff's ability to do work-related activities that she could occasionally lift and carry 10 pounds, but could sit, stand, and walk only 1-2 hours each in an 8-hour workday. (Tr. 493-94.) Interestingly, the ALJ rejected this opinion on the basis that it was inconsistent with the overall evidence of record. (*Id.* 28.) However, this is not supported by the record, as the vast majority of evidence from the record indicates that Plaintiff is not able to work.

Dr. Cambe from the Mapleton Pain Clinic also opined in July 2005 that Plaintiff was unable to function 6-8 hours a day, 40 hours a week even in unskilled, seated work. (Tr. 501-09.) In October 2005 and February 2007, Dr. Colliton also found that Plaintiff was unable to work full time, even in sedentary work. (*Id.* 590, 657.) Dr. Solano, Plaintiff's treating general practitioner, opined in March 2007 that Plaintiff could not work full time. (*Id.* 631-35.) Finally, a rehabilitation counselor opined in September 2005 that Plaintiff was unable to work full time work. (*Id.* 576-88.)

The ALJ stated that he gave little to no weight to the above opinions, although it appears he gave these opinions no weight. Again, the actual weight given to each medical source must be clarified on remand. Instead, the ALJ stated that he gave "great weight" to the state agency physician's opinion in April 2005 and to Dr. Colliton's February 2007 assessment, conducted after the date Plaintiff was last insured, in finding that Plaintiff could perform light exertional work. (Tr. 31).

Turning to my analysis, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994). "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ is not, however, entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

Turning to my analysis, I previously found that the ALJ did not properly weigh the treating physicians' opinions and findings regarding Plaintiff's mental impairments. I also find that the ALJ did not properly weight the treating physicians' opinions and findings regarding Plaintiff's physical impairments.

I first note that the ALJ improperly concluded that the treating physician's assessments of Plaintiff's ability to work were based merely on Plaintiff's subjective

complaints. (Tr. 28.) However, an ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain. *Id.*; *see also Garcia v. Barnhart*, 188 Fed. Appx. 760 (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence") (citing *Langley,* 373 F.3d at 1121 ).[6] In this case, the treating physicians' opinions appear to have been based on medical findings based on diagnoses found in the record. Accordingly, I find error with the ALJ's conclusions in this regard.

The ALJ also repeatedly noted that the treating physicians' assessments of Plaintiff's ability to work were not supported in their treatment records. While an ALJ can reject a treating physician's opinions if they are inconsistent with or unsupported by specific findings, *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988), this does not mean that the treatment records must contain a functional assessment of a claimant's work abilities in order to support a work assessment and opinions about a claimant's ability to work. Instead, I believe that there must be an actual inconsistency in a finding or the lack of any medical findings that would support the disability assessment. Here,

---

[6] Further, it is improper for an ALJ to reject a psychological opinion because it is based on a claimant's responses. *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005).

the treating physicians clearly made medical findings that support the existence of both Plaintiff's pain and impairments.  The ALJ thus erred by disregarding the treating physicians' opinions on this basis.

The ALJ also rejected treating physicians' opinions as to Plaintiff's work ability because many findings on examination were normal.  (Tr. 30, 32.)  However, the ALJ's opinion actually noted many findings that were not normal by treating physicians such as Dr. Sanders, but improperly rejected those findings based on the fact they were based on Plaintiff's subjective complaints, as discussed above.  Further, the ALJ failed to consider that the treating physicians were making assessments based on the combination of Plaintiff's impairments and pain.  *See, e.g.*, Tr. at 590 (finding that Plaintiff cannot work due to cognitive impairments, her medication regime which requires heavy narcotics, and her physical limitations from her impairments).  Finally on this issue, pain and many of Plaintiff's impairments such as fibromyalgia and headaches are not assessed through such objective findings.  See, e.g., *Moore v. Barnhart*, 114 Fed. Appx. 983, 990-92 (10th Cir. 2004); *Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at *3 (10th Cir. 1997); *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006).  The Tenth Circuit has made clear that an ALJ errs when he requires such objective evidence for impairments that are not diagnosed through such evidence.  *Sisco v. U.S. Dept. of Health and Human Servs.*, 10 F.3d 739, 743-44 (10th Cir. 1993).

Also as to the treating physicians, "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if [they] 'outweigh[ ]' the treating physician's report, not the

other way around.  *Goatcher v. U.S. Dept. of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  The ALJ did not appear to follow this rule in his decision.

Finally, even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject the physician's opinions outright.  *Langley*, 373 F.3d at 1120.  Instead, the opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'"  *Id.* (quotation omitted).  The ALJ's decision does not reflect that he gave deference to the treating physicians' findings and opinions, or that he gave "any consideration of what lesser weight the opinions should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527."  *Id.*

Thus, on remand, the ALJ must properly weigh the treating physicians' opinions. The ALJ must also weigh the evidence from sources other than physicians, such as the evidence from the physical therapists and the opinion from Reentry Rehabilitation. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5P ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored"); *see also* SSR 06-03p (discussing factors to be considered in assessing weight of other sources).

The opinions from Plaintiff's doctors that she is disabled must also be properly weighed, and cannot be rejected as the ALJ did in this case because they are typed forms presented by the claimant's attorney.  (Tr. 29.)  Incredibly, the ALJ found that the submission of such a form to Dr. Sanders, Plaintiff's treating neurosurgeon, by Plaintiff's attorney is "evidence of [Plaintiff's] disability seeking nature".  (*Id.*)  This was error and

shows the extent to which the ALJ was determined to go to find Plaintiff not credible. Instead, disability opinions can properly be sought by a claimant of her treating physicians, and must be evaluated by the ALJ. *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452, at *3 (10th Cir. 2002) ("The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner").

Finally, I find that the ALJ erred in finding that Plaintiff could perform light work based on the state agency physician and that of Dr. Colliton. First, and most importantly, he ignored or improperly disregarded the evidence from Dr. Colliton that Plaintiff could not perform even sedentary work, as discussed above. Further, the ALJ ignored the findings in the work assessment that he actually relied on of Dr. Colliton (her Medical Source Statement regarding Plaintiff's physical ability to do work), which opined that Plaintiff could only occasionally lift up to 20 pounds and could only occasionally carry up to 10 pounds. (*Id.* 649). This does not support a light work assessment. 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds) (emphasis added).

Finally, the ALJ ignored the state agency physician's finding that Plaintiff was limited in reaching. (Tr. 360.) He also chose to give no weight to Dr. Colliton's finding in her Medical Source Statement regarding Plaintiff's physical ability to work that Plaintiff cannot use her upper extremities. These limitations would appear to impact

Plaintiff's ability to perform light work, and if supported, should have been included in the hypothetical question to the vocational expert.

The reason the ALJ stated for ignoring Dr. Colliton's finding was that it was inconsistent with her exam and that of Dr. Sanders and Dr. Cambe. (Tr. 31.) However, both Dr. Cambe's and Dr. Sanders' findings support the impairments in Plaintiff's upper extremities. As the ALJ noted, Dr. Sanders found in 2004 and July 2005 that Plaintiff had severe pain and limitations bilaterally and with her arms. (Tr. 28.) Dr. Cambe also substantiated Plaintiff's bilateral upper extremity limitations. (*Id.* 309, 311, 314-15, 383, 388, 398, 405, 413, 422, 432, 441, 453, 455, 502, 507.) Further, Dr. Colliton's exams consistently stated that Plaintiff could not use her upper extremities enough to do light work. (Tr. 589, 590, 599, 643, 649-653, 657.) Other doctors, including Drs. Gilman, Duke, and Raub, and therapists also substantiated this. (*Id.* 156, 159, 255, 260, 273-74, 286, 320-22, 460-61, 520, 523.) These were objective examinations and could not properly be rejected because they were based on Plaintiff's subjective complaints.

Based on the foregoing, I find that the ALJ's decision to rely on the findings of the state agency physician and Dr. Colliton to support both his hypothetical question to the vocational expert and his ultimate finding that Plaintiff could perform light work are not supported by substantial evidence. This must also be reassessed on remand.

III.    CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

It is

FURTHER ORDERED that on remand, the Commissioner shall appoint a new

ALJ to hear the case.

Dated March 31, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge